UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA LACROSSE, INC., <br> Plaintiff, <br> v. <br> LACROSSE UNLIMITED, INC., <br> Defendant. | Case No.: 16-CV-2111-CAB-JLB <br><br> **ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION** |
| LACROSSE UNLIMITED, INC., <br> Counter Claimant, <br> v. <br> CALIFORNIA LACROSSE, INC., <br> Counter Defendant. | [Doc. No. 24] |

This matter is before the Court on a motion for preliminary injunction filed by Defendant/Counter Claimant Lacrosse Unlimited, Inc. ("LUI"). The motion has been fully briefed, and the Court deems it suitable for submission without oral argument. For the following reasons, the motion is denied.

**I. Background**

Adrenaline Lacrosse, Inc. ("ALI") manufactures the Adrenaline brand of lacrosse apparel. Until 2014, ALI's subsidiary, Plaintiff/Counter Defendant California Lacrosse, Inc. ("CLI"), sold Adrenaline apparel at eight brick and mortar retail stores called "South Swell Sports" in California and Texas (the "Stores"), and through a website with the same name. In September 2014, CLI and LUI entered into an Asset Purchase Agreement ("APA") pursuant to which CLI agreed to sell and LUI agreed to purchase: (1) physical assets and customer contracts associated with the Stores; (2) CLI's internet-based lacrosse retail sales business ("Internet Sales"); and (3) CLI's operations for retail sales made directly to lacrosse teams and organizations ("Team Sales"). [Doc. No. 25-1.]

In exchange for these assets, LUI agreed to the following:

1. To pay CLI a "fixed cash price" of $312,281;
2. To pay CLI quarterly royalties on revenues from the Team Sales transferred under the APA equal to: (a) 10% with a minimum of $225,000 in the first year following the closing date ("Year One"); (b) 7.5% with a minimum of $150,000 in the second year ("Year Two"); and (c) 5% with a minimum of $125,000 in the third year ("Year Three").
3. To purchase $800,000 in Adrenaline apparel over the three years following close of the APA, including at least $200,000 in Year One, $300,000 in Year Two, and $300,000 in Year Three.
4. To purchase, in addition to the Adrenaline apparel, $300,000 in "Team Apparel," defined as "apparel and product that is purchased in high volume for use by lacrosse teams and drop shipped by a team dealer from a vendor directly to a team customer and generally sold from stock inventory not store inventory." [*Id.* at 10.]

The APA also required LUI to provide CLI with quarterly reports of its Team Sales Revenues and, with 60 days notice, to provide CLI with access to LUI's books and records to verify the accuracy of these reports. In addition, the APA included a non-competition

provision pursuant to which CLI agreed not to operate brick and mortar retail lacrosse stores within thirty miles of the Stores and not to make any Team Sales directly to customers for three years after the closing date. [*Id.* at 21.] The APA contains an attorney's fee provision, and states that it is governed by Delaware law. [*Id.* at 22.]

On August 19, 2016, CLI filed the complaint in this lawsuit. According to the complaint: (a) LUI made quarterly royalty payments totaling $139,774 for the first two quarters following closing, but has made no payments since April 2015; (b) LUI has not provided quarterly reports since July 2015; (c) LUI's retail and Team Apparel purchases have not satisfied the APA's minimum requirements; and (d) LUI has represented that it does not intend to comply with its continuing obligations under the APA. Based on these allegations, the complaint asserted claims for: (1) breach of contract; (2) specific performance; (3) accounting; (4) conversion; and (5) declaratory relief.

In its answer, filed on November 7, 2016, LUI admitted that it has not made any royalty payments aside from the $139,774 alleged in the complaint and that it has not provided quarterly reports since July 2015. LUI also asserted a counterclaim alleging that: (a) CLI fraudulently induced LUI to enter into the APA by making false statements about CLI's revenue from Team Sales; (b) CLI breached the non-compete provision by conducting Team Sales; and (c) CLI was late in delivering one of LUI's orders in the fall of 2014. Based on these allegations, LUI asserted the following claims against CLI: (1) fraudulent inducement; (2) breach of contract related to the non-compete provision; (3) breach of contract related to the delayed delivery of one of LUI's orders; (4) account stated based on $41,000 in goods that LUI alleged delivered to CLI but CLI did not pay for; and (5) indemnification for failing to transfer the value of the Team Sales business promised in the APA. Notably, in light of the instant motion, the counterclaim sought a determination that the APA is void, but did not ask for injunctive relief to prevent CLI from violating the non-compete provision in the APA.

Meanwhile, on October 31, 2016, LUI had filed its own lawsuit against CLI in New York state court (the "New York Action"). LUI's complaint in the New York Action was

substantively identical to its counterclaim here. On December 2, 2016, CLI removed the New York Action to the United States District Court for the Eastern District of New York. On December 23, 2016, LUI filed an amended complaint and a motion for a preliminary injunction in the New York Action. The amended complaint added a claim for breach of contract arising out of CLI's alleged breach of the APA because only 200 of the 649 Team Sales accounts transferred to LUI pursuant to the APA resulted in sales with LUI after the acquisition. [Doc. No. 11 in Case No. 17cv229.] In the accompanying motion, LUI sought a preliminary injunction precluding CLI from violating the non-compete provision in the APA. [Doc. No. 13 in Case No. 17cv229.]

The day before LUI moved for a preliminary injunction in the New York Action, CLI had filed a motion to transfer venue of the New York Action to this Court. [Doc. No. 10 in Case No. 17cv229.] The New York district court stayed briefing on LUI's motion for preliminary injunction until the motion to transfer was decided, and ultimately granted CLI's motion, so CLI never filed an opposition to the motion in the New York district court. On February 3, 2017, the New York Action was transferred to this Court and assigned to the undersigned. After a status conference with the parties, this Court consolidated the New York Action [S.D. Cal. Case No. 17cv229] with this action and gave LUI leave to file a amended counterclaim in this action to add the breach of contract claim it had added in the amended complaint in the New York Action. The consolidation order also set a briefing schedule for LUI to file a motion for preliminary injunction.

Consistent with this Court's consolidation order, LUI filed the instant motion for preliminary injunction on February 28, 2017. The motion is substantively similar to the motion LUI had filed in the New York Action in that it asks for an order enjoining CLI from violating the non-compete provision in the APA.

**II. Analysis**

"A preliminary injunction is an extraordinary remedy never awarded as of right. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 9, 24 (2008). Injunctive relief may only be granted upon a showing of "irreparable injury and the inadequacy of legal

4

16-CV-2111-CAB-JLB

remedies." *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982); *Stanley v. Univ. of So. Calif.*, 13 F.3d 1313, 1320 (9th Cir. 1994). For party to prevail on a motion for preliminary injunction, therefore, it must demonstrate that: "(1) it is likely to succeed on the merits of its claim, (2) it is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of hardships tips in its favor, and (4) a preliminary injunction is in the public interest." *Int'l Franchise Ass'n, Inc. v. City of Seattle*, 803 F.3d 389, 399 (9th Cir. 2015) (citing *Winter*, 555 U.S. at 20). LUI has failed to satisfy any of these requirements.

### A. Likelihood of Success on the Merits

While a moving party must meet all four elements set forth by *Winter*, with respect to demonstrating the likelihood of success on the merits, a preliminary injunction is appropriate if the moving party can show "that serious questions going to the merits were raised and the balance of hardship tips sharply in the plaintiff's favor." *Alliance for the Wild Rockies v. Cottrell,* 632 F.3d 1127, 1134-35 (9th Cir. 2011) (citing *Lands Council v. McNair*, 537 F.3d 981, 987 (9th Cir. 2008)). Here, LUI argues that it has a likelihood of success on the merits (or that serious questions on the merits exist) because CLI admitted in its answer to the counterclaim that it had made some Team Sales. In response, CLI acknowledges that it made Team Sales, but states that it only began doing so in 2016, a year after LUI had stopped performing under the APA. LUI, in turn, counters that it stopped performing on the APA because CLI had breached first by failing to transfer Team Sales Accounts as agreed.

The record before the Court hardly portends a likelihood of success by LUI on the merits of its breach of the non-compete claim. First, LUI's counterclaim asks for the APA to be declared void, in which case there would be no non-compete to enforce. Second, regardless of which party breached first, it appears undisputed that no later than mid-2015, LUI had stopped performing under the APA. Third, LUI offers no evidence disputing that CLI's statement that it did not make any Team Sales until 2016, long after LUI had stopped performing. Fourth, LUI offers no authority for the proposition that LUI could stop

5

performing under the APA but still hold CLI to its continuing obligations under the APA, regardless of who breached first.

Finally, the Court is not persuaded that LUI's failure to achieve the same level of sales from the Team Accounts transferred in the APA demonstrates that CLI somehow breached the agreement. LUI's only evidence that CLI did not achieve the level of pre-acquisition Team Sales it represented to LUI is LUI's inability to generate the same level of sales after the acquisition. However, LUI does not point to any guarantees in the APA or explain why CLI should be held in breach because third parties chose not to purchase products from LUI. Indeed, LUI's argument seemingly defies logic because it was in CLI's interest for LUI to achieve success in Team Sales in light of the royalty payments required under the APA – higher Team Sales by LUI would result in higher royalties to CLI.[1]

Accordingly, if anything, based on the information before the Court at this time, the party with a greater likelihood of success here is CLI. In any event, LUI has not raised any serious questions on the merits. Moreover, as discussed below, the equities do not tip in LUI's favor.

### B. Irreparable Harm

It is well established that monetary injury is not "irreparable harm." *Los Angeles Memorial Coliseum Comm'n v. NFL*, 634 F.2d 1197, 1202 (9th Cir. 1980) (citing *Sampson v. Murray*, 415 U.S. 61, 88 (1974)). The fact that adequate compensatory damages will be available in the ordinary course of litigation weighs heavily against a claim of "irreparable" harm. *Sampson*, 415 U.S. at 90. Moreover, delay in seeking a preliminary injunction weighs against a finding of irreparable harm. *See Garcia v. Google, Inc*., 786 F.3d 733,

---

[1] Moreover, LUI's estimate that CLI's purported misrepresentations resulted in millions of dollars of damage to LUI is difficult to reconcile with the fact that LUI only paid up front a little over $300,000 total for these accounts along with the other assets transferred in the APA. The purchase price and structure of payments by LUI undercuts LUI's claims as to purported misrepresentations by CLI. LUI's failure to anticipate how many of these third party customers would agree to do business with LUI instead of CLI after close of the APA does not constitute a breach or misrepresentation by CLI or mean that CLI did not "transfer" these accounts.

746 (9th Cir. 2015) (holding that the district court did not abuse its discretion by finding a months long delay in seeking an injunction undercut her claim of irreparable harm); *Oakland Tribune, Inc. v. Chronicle Publ'g Co.*, 762 F.2d 1374, 1377 (9th Cir. 1985) ("Plaintiff's long delay before seeking a preliminary injunction implies a lack of urgency and irreparable harm."); *Lydo Enters., Inc. v. City of Las Vegas*, 745 F.2d 1211, 1213 (9th Cir. 1984) ("A delay in seeking a preliminary injunction is a factor to be considered in weighing the propriety of relief").

Here, LUI did not initiate this litigation and, despite knowledge of CLI's alleged breaches of the non-compete provision of the APA, waited months to seek a preliminary injunction. Indeed, there is no indication that LUI would have sought injunctive relief had CLI not filed this lawsuit. This delay alone weighs heavily against a finding of irreparable harm. More importantly, LUI fails to demonstrate why monetary damages would be inadequate. LUI claims that it will suffer harm to its goodwill but does not explain why CLI selling lacrosse apparel manufactured by CLI's parent company would harm LUI's goodwill (as opposed to simply losing that revenue). In reality, any damages LUI suffers as a result of such sales, to the extent they violate the APA, could be compensated by monetary damages equal to LUI's lost profits or CLI's profits if LUI can prove that but for CLI's Team Sales, LUI would have won that business.[2] Accordingly, LUI would not suffer irreparable harm in the absence a preliminary injunction.

### C. Balance of the Equities

Aside from simply stating that the balance of the equities is in its favor, LUI largely ignores this element in its motion. This is likely because LUI stopped making required payments shortly after the APA closed, and the CLI Team Sales that LUI contends violate the non-compete occurred long after LUI stopped performing. Equity does not support

---

[2] Indeed, LUI effectively admits in its motion that its damages are monetary, arguing that CLI's "continued competition postclosing impaired [LUI's] ability to transfer all of the accounts, which could result in damages of as much as approximately $2.5 million per year." [Doc. No. 24-1 at 15.]

enforcing a provision of the APA that is favorable to LUI while ignoring LUI's undisputed failure to perform its obligations under the APA. Moreover, although LUI now claims that CLI breached the APA causing LUI damage, LUI took no action to enforce the APA until CLI sued first and offers no evidence that it ever would have made the claims it makes here if CLI had not sued first. These facts do not support a finding that the equities tip in favor of LUI.

### D. Public Interest

Where, as here, an injunction's reach is narrow and affects only the parties without impacting non-parties, "the public interest will be at most a neutral factor in the analysis rather than one that favors granting or denying the preliminary injunction." *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1139 (9th Cir. 2009) (internal quotes and brackets omitted). Accordingly, this factor does not weigh in favor of granting or denying LUI's motion.

## III. Conclusion

For the foregoing reasons, LUI's motion for a preliminary injunction is **DENIED**. The hearing scheduled for May 4, 2017 is therefore **VACATED**.

It is **SO ORDERED**.

Dated: April 21, 2017

Hon. Cathy Ann Bencivengo
United States District Judge